WEBBER & EGBERT EMPLOYMENT LAW, P.C.
    Kelsey A. Webber, State Bar No. 303721
    Kelsey.Webber@webberlawgroup.com
    Douglas M. Egbert, State Bar No. 265062
    Douglas.Egbert@webberlawgroup.com
    Shaelyn A. Stewart, State Bar No. 335149
    Shaelyn.Stewart@webberlawgroup.com
    Nathan A. Searcy, State Bar No. 345658
    Nathan.Searcy@webberlawgroup.com
1610 R Street, Suite 300
Sacramento, CA 95811
Telephone: (916) 588-0683

Attorneys for Plaintiff JESSICA LEWIS

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA LEWIS,<br><br>        Plaintiff,<br><br>    vs.<br><br>ULTA SALON, COSMETICS & FRAGRANCE, INC., a Delaware Corporation; and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No. 2:24-cv-01108-DC-DMC<br><br>**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>1. **Labor Code 98.6 Retaliation;**<br>2. **Labor Code 1102.5 Retaliation;**<br>3. **Wrongful Termination in Violation of Public Policy;**<br>4. **Failure to Pay Minimum Wages;**<br>5. **Failure to Pay Overtime Wages;**<br>6. **Failure to Pay Wages Owed;**<br>7. **Meal Period Liability;**<br>8. **Rest Period Liability;**<br>9. **Failure to Provide Accurate, Itemized Wage Statements;**<br>10. **Waiting Time Penalties; and**<br>11. **Violation of Business & Professions Code section 17200 et seq.**<br><br>**UNLIMITED CIVIL CASE** |

Plaintiff JESSICA LEWIS submits the instant Verified First Amended Complaint for Damages and Demand for Jury Trial against Defendant ULTA SALON, COSMETICS & FRAGRANCE, INC., and DOES 1 through 50, as follows:

**PARTIES AND JURISDICTION**

1.    Plaintiff JESSICA LEWIS (hereinafter, "Plaintiff"), under information and belief, was, at all times relevant to this action, an employee of Defendant ULTA SALON, COSMETICS & FRAGRANCE, INC.

2.    Defendant ULTA SALON, COSMETICS & FRAGRANCE, INC. (hereinafter, "Defendant Ulta"), was, at all times relevant to this action, a Delaware Corporation doing business in Sutter County, State of California. Under information and belief, Defendant Ulta was, at all times relevant to this action, Plaintiff's employer.

3.    Venue and jurisdiction are proper because the majority of events giving rise to this action took place in Sutter County; because Defendants were doing business in Sutter County; because Plaintiff entered into employment in Sutter County; because Plaintiff worked for Defendants in Sutter County; and because the damages sought exceed the jurisdictional minimum of this Court.

4.    The true names and capacities, whether individual, corporate, associate or otherwise of defendants named herein as DOES 1 through 50 are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will amend this Complaint to show their true names, involvement and capacities when the same have been ascertained. DOES 1 through 50 are residents of the State of California and/or are authorized to do business in the State of California and/or have their principal place of business in the State of California. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants named herein as a DOE was, in some manner, responsible for the injuries and losses suffered by Plaintiff.

5.    At all relevant times, each and every Defendant was an agent and/or employee of each and every other Defendant. In doing the things alleged in the causes of action stated herein, each and every Defendant was acting within the course and scope of this agency or employment, and was acting with the consent, permission, and authorization of each remaining Defendant. All actions of

PLAINTIFF'S VERIFIED FIRST AMENDED
COMPLAINT FOR DAMAGES

1  each Defendant as alleged herein were ratified and approved by every other Defendant or their

2  officers or managing agents.

3  **STATEMENT OF FACTS**

4  6.    Plaintiff began working at Defendant Ulta in about July 2017 as a Retail Sales

5  Manager and was eventually promoted to General Manager.

6  7.    For about the first six and a half years of Plaintiff's employment, Plaintiff was a

7  valued employee who received verbal praise and positive performance reviews.

8  8.    During Plaintiff's employment, Defendant Ulta failed to pay Plaintiff the minimum,

9  regular, and/or overtime wages that Plaintiff was owed. Specifically, throughout Plaintiff's

10  employment, Defendant Ulta employees, managers, vendors, district leaders, brand partners, and

11  Defendant Ulta's security alarm company constantly called and texted Plaintiff regarding work-

12  related tasks while Plaintiff was on and off the clock. For example, in about October 2023, while

13  Plaintiff was on vacation, Plaintiff estimates that Plaintiff worked about twenty (20) hours that week

14  communicating with Defendant Ulta employees about work-related tasks. During this vacation, when

15  Plaintiff's phone briefly lost service, a Defendant Ulta employee reached out to Plaintiff's husband—

16  who was listed as Plaintiff's emergency contact—asking that Plaintiff call the store regarding a work-

17  related task. Defendant Ulta employees reached out through Plaintiff's husband to get to Plaintiff on

18  about four (4) to five (5) occasions while Plaintiff was on family vacations and off the clock

19  throughout Plaintiff's employment with Defendant Ulta.

20  9.    Plaintiff was also frequently contacted off the clock by Defendant Ulta's security

21  alarm company when the store alarm went off. For example, beginning on about July 24, 2023,

22  Defendant Ulta was undergoing roof repairs that repeatedly set the store alarm off every hour from

23  about 11:00 p.m. to about 6:00 a.m. every night for about one (1) week. Plaintiff barely slept that

24  week because she was repeatedly contacted by Defendant Ulta's security alarm company each time

25  the alarm went off and was repeatedly forced to explain to Defendant Ulta's security alarm company

26  that Defendant Ulta was undergoing roof repairs and that the police did not need to be dispatched to

27  Defendant Ulta. Plaintiff was also required to report to Defendant Ulta Loss Prevention, Sabrina

28  Ruiz, and/or Defendant Ulta District Manager, Tammy Ames, each time the store alarm was set off.

PLAINTIFF'S VERIFIED FIRST AMENDED
COMPLAINT FOR DAMAGES

Thus, each time that Plaintiff spoke with Defendant Ulta's security alarm company, Plaintiff was then forced to report the incident to Ms. Ruiz and/or Ms. Ames via text or phone call. In total, Plaintiff estimates that Plaintiff spent about seventeen (17) hours and thirty (30) minutes working overtime while off the clock this week communicating about Defendant Ulta's store alarm going off (overtime meaning time worked beyond eight hours in a single workday or 40 hours in a single workweek). Plaintiff also estimates that Plaintiff spent about an additional seven (7) hours working overtime this week while off the clock performing work-related tasks unrelated to Defendant Ulta's security alarm going off. Thus, Plaintiff estimates that Plaintiff worked a total of about twenty-four (24) hours and thirty (30) minutes of overtime while off the clock the week of July 24, 2023. However, Plaintiff was not compensated for the overtime hours that Plaintiff worked this week. Accordingly, Plaintiff worked in excess of forty (40) hours during the week of July 24, 2023, as Plaintiff worked a total of about sixty-four (64) hours and thirty (30) minutes this week. Plaintiff's hourly rate of pay was about $40.48 during this time. Despite Plaintiff working overtime while off the clock, Plaintiff was not paid the overtime rate of about $60.72 for each hour of overtime that Plaintiff worked during the week of July 24, 2023.

10.    In total, throughout Plaintiff's employment, Plaintiff estimates that Plaintiff worked about seven (7) to twenty-eight (28) hours of off-the-clock overtime each week, on average, performing work-related tasks such as, answering and responding to work-related calls and texts from Defendant Ulta managers, district leaders, employees, vendors, brand partners, and Defendant Ulta's security alarm company, and picking up salon supplies, snacks for the store, and office supplies. However, Plaintiff was not compensated for this time.

11.    Plaintiff cannot recall a single day that Plaintiff did not receive a work-related text or phone call during Plaintiff's employment with Defendant Ulta.

12.    On about December 6, 2023, Ms. Ruiz and Ms. Ames met with Plaintiff, showed Plaintiff a spreadsheet with Plaintiff's work hours from the past four (4) years, and asked Plaintiff, "why do you have so many hours?" Plaintiff informed Ms. Ruiz and Ms. Ames that Plaintiff's hours reflect the constant texts and calls regarding work-related tasks that Plaintiff receives from Defendant Ulta employees, managers, vendors, and Defendant Ulta's security alarm company while Plaintiff is

PLAINTIFF'S VERIFIED FIRST AMENDED
COMPLAINT FOR DAMAGES

off the clock. In response, Ms. Ruiz and Ms. Ames asked Plaintiff, "do you actually think you deserve to be paid for a 15-minute call?" Plaintiff responded by stating, "when I get calls all day, throughout the day, yes." Plaintiff further informed Ms. Ruiz and Ms. Ames that the time Plaintiff included in Plaintiff's timesheets was the bare minimum as Plaintiff did not include the one (1) to four (4) hours of overtime that Plaintiff was forced to work off the clock each day that Plaintiff was scheduled to work and each day that Plaintiff was not scheduled to work every week. Plaintiff also informed Ms. Ruiz and Ms. Ames that according to California state labor law, Plaintiff has the right to be paid for the time that Plaintiff works, and that in violation of California state labor law, Plaintiff was owed unpaid overtime wages for the one (1) to four (4) hours of overtime that Plaintiff was forced to work off the clock each day. Accordingly, Plaintiff made an oral complaint that Plaintiff was owed unpaid overtime wages in violation of California labor law during Plaintiff's meeting with Ms. Ruiz and Ms. Ames. In addition, by informing Ms. Ruiz and Ms. Ames that according to California labor law, Plaintiff was owed unpaid overtime wages for the one (1) to four (4) hours of overtime that Plaintiff was forced to work off the clock each day, Plaintiff complained to Ms. Ruiz and Ms. Ames about what Plaintiff reasonably believed to be a violation of California state labor law regarding unpaid overtime wages.

13.    Additionally, Ms. Ames knew that Plaintiff was working overtime while off the clock without being compensated because Plaintiff was receiving so many work-related calls and texts daily that Defendant Ulta employees would have to reach out to Ms. Ames if Plaintiff could not respond to a call or text right away. In response, on numerous occasions, despite Ms. Ames knowing that Plaintiff was off the clock, Ms. Ames would reach out to Plaintiff and tell Plaintiff that Plaintiff needed to handle the work-related matter. Ms. Ames would also constantly loop Plaintiff into work-related calls when Ms. Ames knew Plaintiff was off the clock. For example, in or about October 2023, while Plaintiff was on vacation, Ms. Ames reached out to Plaintiff and told Plaintiff that Plaintiff needed to handle work-related matters, and looped Plaintiff into work-related calls on numerous occasions, despite Ms. Ames knowing that Plaintiff was off the clock.

14.    After interrogating Plaintiff for about two (2) hours regarding Plaintiff's work hours, Ms. Ruiz and Ms. Ames retaliated against Plaintiff by suspending Plaintiff.

PLAINTIFF'S VERIFIED FIRST AMENDED
COMPLAINT FOR DAMAGES

15.     Thereafter, on about December 11, 2023, Defendants retaliated against Plaintiff by terminating Plaintiff's employment. The offered justifications for Plaintiff's termination were pretextual to mask the true reason of retaliation.

16.     During Plaintiff's employment, Defendant Ulta failed to provide Plaintiff with Labor Code-compliant meal and rest breaks. Specifically, Plaintiff was forced to carry and respond to a walkie talkie and Plaintiff's cell phone during meal and rest breaks. In particular, Plaintiff was contacted by Defendant Ulta managers, employees, vendors, district leaders, and brand partners about work-related tasks during Plaintiff's meal and rest breaks. Plaintiff was also forced to pick up salon supplies, snacks for the store, and office supplies during Plaintiff's meal and rest breaks. However, Plaintiff was not compensated for this time. For example, on about July 12, 2022, Plaintiff was forced to pick up salon supplies during Plaintiff's meal break and Plaintiff was forced to work through Plaintiff's rest break because Plaintiff was contacted about work-related tasks. However, Plaintiff was not compensated for this time.

17.     Throughout Plaintiff's entire employment with Defendant Ulta, Plaintiff estimates that Plaintiff received an uninterrupted, Labor Code-compliant meal break on less than ten (10) occasions total.

18.     Plaintiff does not recall receiving a ten (10) minute, uninterrupted rest break during any shift that Plaintiff worked throughout Plaintiff's employment with Defendant Ulta.

19.     Additionally, Plaintiff was forced to use an app on her phone to clock in and out of work. However, the app frequently did not work, and Plaintiff was forced to unlock the door and turn off the alarm prior to clocking in. Plaintiff estimates that it took her about two (2) to four (4) minutes to do so. However, Plaintiff was not compensated for this time.

**FIRST CAUSE OF ACTION**
**Labor Code § 98.6 Retaliation**
**(Against Defendant Ulta)**

20.     The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

21.     At all relevant times, under information and belief, Plaintiff was an employee of Defendant Ulta.

PLAINTIFF'S VERIFIED FIRST AMENDED
COMPLAINT FOR DAMAGES

22.    California Labor Code § 98.6 (a), provides:

> [a] person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the employee or applicant for employment has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights that are under the jurisdiction of the Labor Commissioner, made a written or oral complaint that he or she is owed unpaid wages, or because the employee has initiated any action or notice pursuant to Section 2699, or has testified or is about to testify in a proceeding pursuant to that section, or because of the exercise by the employee or applicant for employment on behalf of himself, herself, or others of any rights afforded him or her.

23.    Here, Plaintiff engaged in protected activity. Specifically, on about December 6, 2023, Defendant Ulta Loss Prevention, Sabrina Ruiz, and Defendant Ulta District Manager, Tammy Ames, met with Plaintiff, showed Plaintiff a spreadsheet with Plaintiff's work hours from the past four (4) years, and asked Plaintiff, "why do you have so many hours?" Plaintiff informed Ms. Ruiz and Ms. Ames that Plaintiff's hours reflect the constant texts and calls regarding work-related tasks that Plaintiff receives from Defendant Ulta employees, managers, vendors, and Defendant Ulta's security alarm company while Plaintiff is off the clock. In response, Ms. Ruiz and Ms. Ames asked Plaintiff, "do you actually think you deserve to be paid for a 15-minute call?" Plaintiff responded by stating, "when I get calls all day, throughout the day, yes." Plaintiff further informed Ms. Ruiz and Ms. Ames that the time Plaintiff included in Plaintiff's timesheets was the bare minimum as Plaintiff did not include the one (1) to four (4) hours of overtime that Plaintiff was forced to work off the clock each day that Plaintiff was scheduled to work and each day that Plaintiff was not scheduled to work every week. Plaintiff also informed Ms. Ruiz and Ms. Ames that according to California state labor law, Plaintiff has the right to be paid for the time that Plaintiff works, and that in violation of California state labor law, Plaintiff was owed unpaid overtime wages for the one (1) to four (4) hours of overtime that Plaintiff was forced to work off the clock each day. Accordingly, Plaintiff made an oral complaint that Plaintiff was owed unpaid

overtime wages in violation of California labor law during Plaintiff's meeting with Ms. Ruiz and Ms. Ames. In addition, by informing Ms. Ruiz and Ms. Ames that according to California labor law, Plaintiff was owed unpaid overtime wages for the one (1) to four (4) hours of overtime that Plaintiff was forced to work off the clock each day, Plaintiff complained to Ms. Ruiz and Ms. Ames about what Plaintiff reasonably believed to be a violation of California state labor law regarding unpaid overtime wages.

24.    Thereafter, Plaintiff was retaliated against when Plaintiff was suspended then terminated after Plaintiff complained to Ms. Ruiz and Ms. Ames about the unpaid overtime wages that Plaintiff was owed and the violation of California state labor law.

25.    As a result of Defendant's conduct and breach of the code section, Plaintiff suffered and will continue to suffer damages, the exact amount of which has not been fully ascertained but is within the jurisdiction of this Court. Plaintiff is entitled to damages, including, but not limited to lost wages, salary, benefits and certain other incidental and consequential expenses and damages in an amount to be shown at the time of trial.

26.    In addition, Plaintiff has been forced as a result of defendant's breach to retain a law firm to enforce Plaintiff's rights, and has incurred and will continue to incur costs and reasonable attorneys' fees in connection herewith, recovery of which plaintiffs are entitled to according to proof.

27.    As a direct and proximate result of the acts of Defendant, Plaintiff sustained and continues to suffer severe emotional distress. Plaintiff seeks general damages for Plaintiff's severe emotional distress and other consequential damages in an amount not less than an amount within the jurisdiction of this court, the exact amount to be proven at trial.

28.    Plaintiff is informed, believes and thereon alleges that Defendant acted fraudulently, maliciously and oppressively with a conscious, reckless and willful disregard, and/or with callous disregard of the probable detrimental and economic consequences to Plaintiff, and to the direct benefit to Defendant, knowing that Defendant's conduct was substantially certain to vex, annoy and injure Plaintiff and entitle Plaintiff to punitive damages under California Civil Code §3294, in an amount sufficient to punish or to make an example of Defendant.

///

### SECOND CAUSE OF ACTION
**Labor Code § 1102.5 Retaliation**
**(Against Defendant Ulta)**

29.     The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

30.     At all relevant times, under information and belief, Plaintiff was an employee of Defendant Ulta.

31.     California Labor Code §1102.5(a), in pertinent part, provides:

> [a]n employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation or policy preventing an employee from disclosing information to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

Labor Code §1102.5(b) provides:

> [a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

Labor Code §1102.5 subsections (c)&(d) provide:

> (c) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

1

2

3

      (d) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for having exercised his or her rights under subdivision (a), (b), or (c) in any former employment.

4        32.    Here, Plaintiff engaged in protected activity. Specifically, on about December 6,

5  2023, Defendant Ulta Loss Prevention, Sabrina Ruiz, and Defendant Ulta District Manager, Tammy

6  Ames, met with Plaintiff, showed Plaintiff a spreadsheet with Plaintiff's work hours from the past

7  four (4) years, and asked Plaintiff, "why do you have so many hours?" Plaintiff informed Ms. Ruiz

8  and Ms. Ames that Plaintiff's hours reflect the constant texts and calls regarding work-related tasks

9  that Plaintiff receives from Defendant Ulta employees, managers, vendors, and Defendant Ulta's

10  security alarm company while Plaintiff is off the clock. In response, Ms. Ruiz and Ms. Ames asked

11  Plaintiff, "do you actually think you deserve to be paid for a 15-minute call?" Plaintiff responded by

12  stating, "when I get calls all day, throughout the day, yes." Plaintiff further informed Ms. Ruiz and

13  Ms. Ames that the time Plaintiff included in Plaintiff's timesheets was the bare minimum as Plaintiff

14  did not include the one (1) to four (4) hours of overtime that Plaintiff was forced to work off the

15  clock each day that Plaintiff was scheduled to work and each day that Plaintiff was not scheduled to

16  work every week. Plaintiff also informed Ms. Ruiz and Ms. Ames that according to California state

17  labor law, Plaintiff has the right to be paid for the time that Plaintiff works, and that in violation of

18  California state labor law, Plaintiff was owed unpaid overtime wages for the one (1) to four (4) hours

19  of overtime that Plaintiff was forced to work off the clock each day. Accordingly, Plaintiff made an

20  oral complaint that Plaintiff was owed unpaid overtime wages in violation of California labor law

21  during Plaintiff's meeting with Ms. Ruiz and Ms. Ames. In addition, by informing Ms. Ruiz and Ms.

22  Ames that according to California labor law, Plaintiff was owed unpaid overtime wages for the one

23  (1) to four (4) hours of overtime that Plaintiff was forced to work off the clock each day, Plaintiff

24  complained to Ms. Ruiz and Ms. Ames about what Plaintiff reasonably believed to be a violation of

25  California state labor law regarding unpaid overtime wages.

26        33.    Thereafter, Defendant retaliated against Plaintiff by suspending and terminating

27  Plaintiff after Plaintiff complained to Ms. Ruiz and Ms. Ames about the unpaid overtime wages that

28  Plaintiff was owed and the violation of California state labor law.

PLAINTIFF'S VERIFIED FIRST AMENDED
COMPLAINT FOR DAMAGES

34.     As a result of Defendant's conduct and breach of the code section, Plaintiff suffered and will continue to suffer damages, the exact amount of which has not been fully ascertained but is within the jurisdiction of this Court. Plaintiff is entitled to damages, including, but not limited to lost wages, salary, benefits and certain other incidental and consequential expenses and damages in an amount to be shown at the time of trial.

35.     In addition, Plaintiff has been forced as a result of Defendant's breach to retain a law firm to enforce Plaintiff's rights and has incurred and will continue to incur costs and reasonable attorneys' fees in connection herewith, recovery of which plaintiffs are entitled to according to proof.

36.     As a direct and proximate result of the acts of Defendant, Plaintiff sustained and continues to suffer severe emotional distress. Plaintiff seeks general damages for Plaintiff's severe emotional distress and other consequential damages in an amount not less than an amount within the jurisdiction of this court, the exact amount to be proven at trial.

37.     Plaintiff is informed, believes and thereon alleges that Defendant acted fraudulently, maliciously and oppressively with a conscious, reckless and willful disregard, and/or with callous disregard of the probable detrimental and economic consequences to Plaintiff, and to the direct benefit to Defendant, knowing that Defendant's conduct was substantially certain to vex, annoy and injure Plaintiff and entitle Plaintiff to punitive damages under California Civil Code §3294, in an amount sufficient to punish or to make an example of Defendant.

### THIRD CAUSE OF ACTION
**Wrongful Termination in Violation of Public Policy**
**(Against Defendant Ulta)**

38.     The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

39.     At all relevant times, under information and belief, Plaintiff was an employee of Defendant Ulta.

40.     "If an employer discharges an employee for exercising his right to overtime wages, the employee will have a viable cause of action for wrongful termination." *Barbosa v. IMPCO Technologies, Inc.* (2009) 179 Cal.App.4th 1116, 1122; see also *Gould v. Maryland Sound Indus., Inc.* (1995) 31 CalApp.4th 1137, 1148 (finding that if an employer fired an employee in order to

1  avoid paying wages owed, it violated fundamental public policy).

2      41.    As set forth above, Plaintiff engaged in protected activity. Specifically, on about
3  December 6, 2023, Defendant Ulta Loss Prevention, Sabrina Ruiz, and Defendant Ulta District
4  Manager, Tammy Ames, met with Plaintiff, showed Plaintiff a spreadsheet with Plaintiff's work
5  hours from the past four (4) years, and asked Plaintiff, "why do you have so many hours?" Plaintiff
6  informed Ms. Ruiz and Ms. Ames that Plaintiff's hours reflect the constant texts and calls regarding
7  work-related tasks that Plaintiff receives from Defendant Ulta employees, managers, vendors, and
8  Defendant Ulta's security alarm company while Plaintiff is off the clock. In response, Ms. Ruiz and
9  Ms. Ames asked Plaintiff, "do you actually think you deserve to be paid for a 15-minute call?"
10  Plaintiff responded by stating, "when I get calls all day, throughout the day, yes." Plaintiff further
11  informed Ms. Ruiz and Ms. Ames that the time Plaintiff included in Plaintiff's timesheets was the
12  bare minimum as Plaintiff did not include the one (1) to four (4) hours of overtime that Plaintiff was
13  forced to work off the clock each day that Plaintiff was scheduled to work and each day that Plaintiff
14  was not scheduled to work every week. Plaintiff also informed Ms. Ruiz and Ms. Ames that
15  according to California state labor law, Plaintiff has the right to be paid for the time that Plaintiff
16  works, and that in violation of California state labor law, Plaintiff was owed unpaid overtime wages
17  for the one (1) to four (4) hours of overtime that Plaintiff was forced to work off the clock each day.
18  Accordingly, Plaintiff made an oral complaint that Plaintiff was owed unpaid overtime wages in
19  violation of California labor law during Plaintiff's meeting with Ms. Ruiz and Ms. Ames. In addition,
20  by informing Ms. Ruiz and Ms. Ames that according to California labor law, Plaintiff was owed
21  unpaid overtime wages for the one (1) to four (4) hours of overtime that Plaintiff was forced to work
22  off the clock each day, Plaintiff complained to Ms. Ruiz and Ms. Ames about what Plaintiff
23  reasonably believed to be a violation of California state labor law regarding unpaid overtime wages.

24      42.    Thereafter, Defendant wrongfully suspended then terminated Plaintiff because
25  Plaintiff had complained to Ms. Ruiz and Ms. Ames about the unpaid overtime wages that Plaintiff
26  was owed and the violation of California state labor law.  Said termination violated the public policies
27  embodied in Labor Code sections 98.6 and 1102.5.

28

PLAINTIFF'S VERIFIED FIRST AMENDED
COMPLAINT FOR DAMAGES

43.     As a result of Defendant's conduct and breach of the code section, Plaintiff suffered and will continue to suffer damages, the exact amount of which has not been fully ascertained but is within the jurisdiction of this Court. Plaintiff is entitled to damages, including, but not limited to lost wages, salary, benefits and certain other incidental and consequential expenses and damages in an amount to be shown at the time of trial.

44.     As a direct and proximate result of the acts of Defendant, Plaintiff sustained and continues to suffer severe emotional distress. Plaintiff seeks general damages for Plaintiff's severe emotional distress and other consequential damages in an amount not less than an amount within the jurisdiction of this court, the exact amount to be proven at trial.

45.     Plaintiff is informed, believes and thereon alleges that Defendant acted fraudulently, maliciously and oppressively with a conscious, reckless and willful disregard, and/or with callous disregard of the probable detrimental and economic consequences to Plaintiff, and to the direct benefit to Defendant knowing that Defendant's conduct was substantially certain to vex, annoy and injure Plaintiff and entitle Plaintiff to punitive damages under California Civil Code § 3294, in an amount sufficient to punish or to make an example of Defendant.

**FOURTH CAUSE OF ACTION**
**Failure to Pay Minimum Wages**
**(Against Defendant Ulta)**

46.     The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

47.     At all relevant times, under information and belief, Plaintiff was an employee of Defendant Ulta.

48.     Labor Code section 1197 makes it unlawful to pay an employee less than the minimum wage, as established by the Industrial Welfare Commission, for each hour worked.

49.     Labor Code section 1194 entitles an employee receiving less than the minimum wage to recover, in a civil action, the unpaid balance of minimum wages owing, plus interest thereon, reasonable attorneys' fees, and costs of suit.

50.    Labor Code section 1194.2 entitles an employee receiving less than the minimum wage to recover liquidated damages in an amount equal to the unpaid minimum wages and interest thereon.

51.    Defendant failed to pay Plaintiff minimum wages for all hours worked. Specifically, Plaintiff estimates that Plaintiff worked about seven (7) to twenty-eight (28) hours of off-the-clock each week, on average, performing work-related tasks such as, answering and responding to work-related calls and texts from Defendant Ulta managers, district leaders, employees, vendors, brand partners, and Defendant Ulta's security alarm company, and picking up salon supplies, snacks for the store, and office supplies. However, Plaintiff was not compensated for this time.

52.    Accordingly, Plaintiff was not paid the required hourly minimum wage of $13.00 per hour in 2020, $14.00 per hour in 2021, $15.00 per hour in 2022, and $15.50 per hour in 2023 for the additional seven (7) to twenty-eight (28) hours of off the clock work that Plaintiff was performing in excess of forty (40) hours each week throughout Plaintiff's employment as Defendant Ulta paid Plaintiff $0.00 for this off the clock work.

53.    Accordingly, Plaintiff was required to work without compensation in violation of the Labor Code and applicable Wage Orders.

54.    Defendant has the ability to pay minimum wages for all time worked and has willfully refused to pay such wages with the intent to secure for Defendant a discount upon this indebtedness with the intent to annoy, harass, oppress, hinder, delay, or defraud Plaintiff.

55.    Plaintiff is entitled to recover the unpaid minimum wages (including double minimum wages), liquidated damages in an amount equal to the minimum wages unlawfully unpaid, interest thereon and reasonable attorney's fees and costs of suit pursuant to California Labor Code & 1194(a).

### FIFTH CAUSE OF ACTION
### Failure to Pay Overtime Wages
### (Against Defendant Ulta)

56.    The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

57.    At all relevant times, under information and belief, Plaintiff was an employee of Defendant Ulta.

PLAINTIFF'S VERIFIED FIRST AMENDED
COMPLAINT FOR DAMAGES

58.     Under California's overtime pay laws, an employee is entitled to be paid overtime pay at a rate of time and one half for: (1) each hour worked over eight in a single workday; (2) each hour worked over forty in a single workweek, and (3) the first eight hours worked on the seventh day of work in any workweek. California's overtime pay laws also require employers to pay employees who work in California double time for: (1) each hour worked over twelve in a single day and (2) each hour worked over eight on the seventh consecutive day of work in any given workweek.

59.     Here, Defendant failed to pay Plaintiff overtime wages that Plaintiff was entitled to. Specifically, throughout Plaintiff's employment, Plaintiff estimates that Plaintiff worked about seven (7) to twenty-eight (28) hours of off-the-clock overtime each week (overtime meaning time worked beyond eight hours in a single workday or 40 hours in a single workweek), on average, performing work-related tasks such as, answering and responding to work-related calls and texts from Defendant Ulta managers, district leaders, employees, vendors, brand partners, and Defendant Ulta's security alarm company, and picking up salon supplies, snacks for the store, and office supplies. However, Plaintiff was not paid for the overtime hours that Plaintiff worked.

60.     Under information and belief, from about 2020 to about early March 2021, Plaintiff's rate of pay was about $31.32 per hour. However, Plaintiff was not paid the overtime hourly rate of about $46.98 for the overtime hours that Plaintiff worked during this time period as Defendant Ulta failed to compensate Plaintiff for the off-the-clock overtime hours that Plaintiff worked. From about March 7, 2021 to about April 17, 2021, Plaintiff's rate of pay was about $32.29 per hour. However, Plaintiff was not paid the overtime hourly rate of about $48.44 for the overtime hours that Plaintiff worked during this time period as Defendant Ulta failed to compensate Plaintiff for the off-the-clock overtime hours that Plaintiff worked. From about April 18, 2021 to about April 16, 2022, Plaintiff's rate of pay was about $33.26 per hour. However, Plaintiff was not paid the overtime hourly rate of about $49.89 for the overtime hours that Plaintiff worked during this time period as Defendant Ulta failed to compensate Plaintiff for the off-the-clock overtime hours that Plaintiff worked.  From about April 17, 2022 to about April 15, 2023, Plaintiff's rate of pay was about $34.92 per hour. However, Plaintiff was not paid the overtime hourly rate of about $52.38 for the overtime hours that Plaintiff worked during this time period as Defendant Ulta failed to compensate Plaintiff for the off-the-clock

PLAINTIFF'S VERIFIED FIRST AMENDED
COMPLAINT FOR DAMAGES

overtime hours that Plaintiff worked. From about April 16, 2023 to about September 9, 2023, Plaintiff's rate of pay was about $40.48 per hour. However, Plaintiff was not paid the overtime hourly rate of about $60.72 for the overtime hours that Plaintiff worked during this time period as Defendant Ulta failed to compensate Plaintiff for the off-the-clock overtime hours that Plaintiff worked. From about September 10, 2023 until Plaintiff's termination, Plaintiff's rate of pay was about $42.10 per hour. However, Plaintiff was not paid the overtime hourly rate of about $63.15 for the overtime hours that Plaintiff worked during this time period as Defendant Ulta failed to compensate Plaintiff for the off-the-clock overtime hours that Plaintiff worked.

61.     For example, beginning on about July 24, 2023, Defendant Ulta was undergoing roof repairs that repeatedly set the store alarm off every hour from about 11:00 p.m. to about 6:00 a.m. every night for about one (1) week. Plaintiff barely slept that week because she was repeatedly contacted by Defendant Ulta's security alarm company each time the alarm went off and was repeatedly forced to explain to Defendant Ulta's security alarm company that Defendant Ulta was undergoing roof repairs and that the police did not need to be dispatched to Defendant Ulta. Plaintiff was also required to report to Defendant Ulta Loss Prevention, Sabrina Ruiz, and/or Defendant Ulta District Manager, Tammy Ames each time the store alarm was set off. Thus, each time that Plaintiff spoke with Defendant Ulta's security alarm company, Plaintiff was then forced to report the incident to Ms. Ruiz and/or Ms. Ames via text or phone call. In total, Plaintiff estimates that Plaintiff spent about seventeen (17) hours and thirty (30) minutes working overtime while off the clock this week communicating about Defendant Ulta's security alarm going off. Plaintiff also estimates that Plaintiff spent about an additional seven (7) hours working overtime this week while off the clock performing work-related tasks unrelated to Defendant Ulta's security alarm going off. Thus, Plaintiff estimates that Plaintiff worked a total of about twenty-four (24) hours and thirty (30) minutes of overtime while off the clock the week of July 24, 2023. However, Plaintiff was not compensated for the overtime hours that Plaintiff worked this week. Accordingly, Plaintiff worked in excess of forty (40) hours during the week of July 24, 2023, as Plaintiff worked a total of about sixty-four (64) hours and thirty (30) minutes this week. Plaintiff's hourly rate of pay was about $40.48 during this time. Despite

1  Plaintiff working overtime while off the clock, Plaintiff was not paid the overtime rate of about
2  $60.72 for each hour of overtime that Plaintiff worked during the week of July 24, 2023.

3      62.    Defendant's failure to pay compensation in a timely fashion also constituted a
4  violation of California Labor Code 204, which requires that all wages be paid semimonthly.
5  Defendant has failed to pay all wages and overtime compensation earned by Plaintiff. Each such
6  failure to make a timely payment of compensation to Plaintiff constitutes a separate violation of
7  California Labor Code § 204.

8      63.    Plaintiff has been damaged by these violations of California Labor Code §§ 204 and
9  510 (and the relevant orders of the Industrial Welfare Commission).

10     64.    Consequently, pursuant to California Labor Code §§ 204, 510, and 1194 (and the
11  relevant orders of the Industrial Welfare Commission), Defendant is liable to Plaintiff for the full
12  amount of all Plaintiff's unpaid wages and overtime compensation, with interest, plus their
13  reasonable attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**Failure to Pay Wages Owed**
**(Against Defendant Ulta)**

16     65.    The allegations set forth in this complaint are hereby re-alleged and incorporated by
17  reference.

18     66.    At all relevant times, under information and belief, Plaintiff was an employee of
19  Defendant Ulta.

20     67.    Defendant failed to pay Plaintiff wages for all hours worked. Specifically, throughout
21  Plaintiff's employment, Plaintiff estimates that Plaintiff worked about seven (7) to twenty-eight (28)
22  hours of off-the-clock overtime each week, on average, performing work-related tasks such as,
23  answering and responding to work-related calls and texts from Defendant Ulta managers, district
24  leaders, employees, vendors, brand partners, and Defendant Ulta's security alarm company, and
25  picking up salon supplies, snacks for the store, and office supplies. However, Plaintiff was not
26  compensated for this time. Additionally, Plaintiff was forced to use an app on her phone to clock in
27  and out of work. However, the app frequently did not work, and Plaintiff was forced to unlock the
28  door and turn off the alarm prior to clocking in. Plaintiff estimates that it took her about two (2) to

four (4) minutes to do so. However, Plaintiff was not compensated for this time. Accordingly, Plaintiff was forced to work without compensation in violation of the Labor Code and applicable Wage Orders.

68.    Accordingly, Plaintiff is entitled to recover the unpaid balance of the wages owed, plus interest thereon, reasonable attorneys' fees, and costs of suit. Plaintiff is also entitled to liquidated damages in an amount equal to the unpaid wages and interest thereon.

69.    Defendant has the ability to pay wages for all time worked and has willfully refused to pay such wages with the intent to secure for Defendants a discount upon this indebtedness with the intent to annoy, harass, oppress, hinder, delay, or defraud Plaintiff.

**SEVENTH CAUSE OF ACTION**
**Meal Period Liability**
**(Against Defendant Ulta)**

70.    The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

71.    At all relevant times, under information and belief, Plaintiff was an employee of Defendant Ulta.

72.    Plaintiff worked shifts greater than five (5) hours. Pursuant to Labor Code § 512 an employer may not employ someone for a shift of more than five (5) hours without providing him or her with a meal period of not less than thirty (30) minutes. Additionally, Labor Code § 512 holds that an employer shall not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than thirty (30) minutes.

73.    Defendant failed to provide Plaintiff with meal periods as required under the Labor Code. Specifically, throughout Plaintiff's employment, Plaintiff was forced to carry and respond to a walkie talkie and Plaintiff's cell phone during meal breaks. In particular, Plaintiff was contacted by Defendant Ulta managers, employees, vendors, district leaders, and brand partners about work-related tasks during Plaintiff's meal breaks. Plaintiff was also forced to pick up salon supplies, snacks for the store, and office supplies during Plaintiff's meal breaks. However, Plaintiff was not compensated for this time. For example, on about July 12, 2022, Plaintiff was forced to pick up salon supplies during Plaintiff's meal break and Plaintiff was forced to work through Plaintiff's rest break

because Plaintiff was contacted about work-related tasks. However, Plaintiff was not compensated for this time.

74.     Throughout Plaintiff's entire employment with Defendant Ulta, Plaintiff estimates that Plaintiff received an uninterrupted, Labor Code-compliant meal break on less than ten (10) occasions total.

75.     Pursuant to Labor Code 226.7, Plaintiff is entitled to damages in an amount equal to one (1) hour of wages at Plaintiff's effective hourly rate of pay for each meal period not provided or deficiently provided, a sum to be proven at trial.

**EIGHTH CAUSE OF ACTION**
**Rest Period Liability**
**(Against Defendant Ulta)**

76.     The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

77.     At all relevant times, under information and belief, Plaintiff was an employee of Defendant Ulta.

78.     Plaintiff worked shifts greater than five (5) hours. Pursuant to the Labor Code and the applicable IWC Wage Order, Plaintiff was entitled to paid rest breaks of not less than ten (10) minutes for each four (4) hours, or substantial fraction thereof, that Plaintiff worked in a day.

79.     The IWC Wage Order requires an employer to pay an employee an additional hour of compensation for every shift in which said employee was not authorized or permitted to take a mandated rest period. California Labor Code section 226.7, subdivision (b), likewise requires an employer to pay an employee an additional hour of compensation for every shift that a rest period mandated by the California Wage Orders is not provided.

80.     At all relevant times herein, Defendant has failed and/or refused to provide Plaintiff with the additional compensation for missed rest periods required by California Labor Code section 226.7 and the applicable IWC Wage Order. Specifically, During Plaintiff's employment, Defendant Ulta failed to provide Plaintiff with Labor Code-compliant rest breaks. Specifically, Plaintiff was forced to carry and respond to a walkie talkie and Plaintiff's cell phone during rest breaks. In particular, Plaintiff was contacted by Defendant Ulta managers, employees, vendors, district leaders,

and brand partners about work-related tasks during Plaintiff's rest breaks. Plaintiff was also forced to pick up salon supplies, snacks for the store, and office supplies during Plaintiff's rest breaks. However, Plaintiff was not compensated for this time. For example, on about July 12, 2022, Plaintiff was forced to work through Plaintiff's rest break because Plaintiff was contacted about work-related tasks. However, Plaintiff was not compensated for this time.

81.     Plaintiff does not recall receiving a ten (10) minute, uninterrupted rest break during any shift that Plaintiff worked throughout Plaintiff's employment with Defendant Ulta.

**NINTH CAUSE OF ACTION**
**Failure to Provide Accurate, Itemized Wage Statements**
**(Against Defendant Ulta)**

82.     The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

83.     California Labor Code § 226(a) requires an employer to furnish each of his or her employees with an accurate, itemized statement in writing showing the gross and net earnings, total hours worked, and the corresponding number of hours worked at each hourly rate; these statements must be appended to the detachable part of the check, draft, voucher, or whatever else serves to pay the employee's wages; or, if wages are paid by cash or personal check, these statements may be given to the employee separately from the payment of wages; in either case the employer must give the employee these statements twice a month or each time wages are paid.

84.     Defendant failed to provide Plaintiff with accurate, itemized wage statements in writing as required by the Labor Code. Specifically, the wage statements given to Plaintiff failed to account for the unpaid wages, overtime, and premium pay for deficiently provided meal and rest periods, all of which Defendant knew, or reasonably should have known, were owed to Plaintiff as alleged above. In particular, Plaintiff's wage statements failed to account for the unpaid overtime that Plaintiff was owed for about seven (7) to twenty-eight (28) hours of off-the-clock overtime work that Plaintiff performed each week, on average, throughout Plaintiff's employment. Additionally, Plaintiff's wage statements failed to include premium pay for Plaintiff's meal and rest breaks that were interrupted with work-related tasks, as discussed above. Plaintiff's wage statements also failed to account for about two (2) to four (4) minutes that Plaintiff spent unlocking the door and turning

off the alarm prior to clocking in when the app Plaintiff used to clock in and out of work did not work.

85.    Moreover, Defendant failed to timely pay Plaintiff wages on a semimonthly basis as required under Labor Code § 204. Defendant also failed to maintain records showing accurate hours worked daily and the wages paid to Plaintiff, as required by Labor Code § 1174 and the applicable IWC wage orders.

86.    As a direct and proximate cause of Defendant's violation of Labor Code § 226(a), Plaintiff suffered injuries, including among other things confusion over whether Plaintiff received all wages owed to Plaintiff, the difficulty and expense involved in reconstructing pay records, and forcing Plaintiff to make mathematical computations to analyze whether the wages paid in fact compensated them correctly for all hours worked.

87.    Pursuant to Labor Code §§ 226(a) and 226(e), Plaintiff is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000). Plaintiff is also entitled to an award of costs and reasonable attorneys' fees.

**TENTH CAUSE OF ACTION**
**Waiting Time Penalties**
**(Against Defendant Ulta)**

88.    The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

89.    At all relevant times, under information and belief, Plaintiff was an employee of Defendant Ulta.

90.    Sections 201 and 202 of the California Labor Code require employers to promptly pay all wages due and owing to an employee at the conclusion of employment.

91.    Here, Defendant willfully failed to pay Plaintiff all wages due and certain at the time of termination. Specifically, at the time of termination, Defendant failed to pay Plaintiff for about seven (7) to twenty-eight (28) hours of off-the-clock overtime work that Plaintiff performed each week, on average, throughout Plaintiff's employment. Defendant also failed to compensate Plaintiff

for working during Plaintiff's meal and rest breaks throughout Plaintiff's employment and for the time that Plaintiff spent unlocking the door and turning off the alarm prior to clocking in when the app Plaintiff used to clock in and out of work did not work.

92.     The wages withheld from Plaintiff by Defendant remained due and owing for more than thirty (30) days from the date of separation of employment.

93.     Defendant's failure to pay wages, as alleged above, was willful in that Defendant knew wages to be due but failed to pay them; this violation entitles Plaintiff to penalties under Labor Code § 203, which provides that an employee's wages shall continue until paid for up to thirty (30) days from the date they were due. Plaintiff is also entitled to Plaintiff's reasonable attorneys' fees and costs.

### ELEVENTH CAUSE OF ACTION
**Violation of Business and Professions Code § 17200 et seq.**
**(Against Defendant Ulta)**

94.     The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

95.     At all relevant times, under information and belief, Plaintiff was an employee of Defendant Ulta.

96.     Plaintiff brings this claim pursuant to Business & Professions Code § 17200 et seq. The conduct of Defendant as alleged in this Complaint has been and continues to be unfair, unlawful, and harmful to Employees and the general public. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure § 1021.5.

97.     Plaintiff is a "person" within the meaning of Business & Professions Code § 17204, has suffered injury, and therefore has standing to bring this cause of action for injunctive relief, restitution, and other appropriate equitable relief.

98.     Business & Professions Code § 17200 et seq. prohibits unlawful and unfair business practices.

99.     Wage-and-hour laws express fundamental public policies. Paying employees their wages and overtime, etc., are fundamental public policies of California. Labor Code § 90.5(a) articulates the public policies of this State vigorously to enforce minimum labor standards, to ensure

PLAINTIFF'S VERIFIED FIRST AMENDED
COMPLAINT FOR DAMAGES

1  that employees are not required or permitted to work under substandard and unlawful conditions, and

2  to protect law-abiding employers and their employees from competitors who lower costs to

3  themselves by failing to comply with minimum labor standards.

4      100.    Defendant has violated statutes and public policies. Through the conduct alleged in

5  this Complaint Defendant has acted contrary to these public policies, has violated specific provisions

6  of the Labor Code, and has engaged in other unlawful and unfair business practices in violation of

7  Business & Professions Code § 17200 et seq.; which conduct has deprived Plaintiff of the rights,

8  benefits, and privileges guaranteed to all employees under the law.

9      101.    Defendant's conduct, as alleged hereinabove, constitutes unfair competition in

10  violation of the Business & Professions Code § 17200 et seq.

11     102.    Defendant, by engaging in the conduct herein alleged, by failing to pay wages,

12  overtime, etc., either knew or in the exercise of reasonable care should have known that their conduct

13  was unlawful; therefore, their conduct violates the Business & Professions Code § 17200 et seq.

14     103.    As a proximate result of the above-mentioned acts of Defendant, Plaintiff has been

15  damaged, in a sum to be proven at trial.

16     104.    Unless restrained by this Court, Defendant will continue to engage in such unlawful

17  conduct as alleged above. Pursuant to the Business & Professions Code this Court should make such

18  orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use

19  by Defendant or their agents or employees of any unlawful or deceptive practice prohibited by the

20  Business & Professions Code, including but not limited to the disgorgement of such profits as may

21  be necessary to restore Plaintiff to the money Defendant has unlawfully failed to pay.

22  **<u>PRAYER FOR RELIEF</u>**

23     **WHEREFORE**, Plaintiff demands judgment against Defendants and any other defendants

24  who may be later added to this action as follows:

25     1.    For general, special, and consequential damages in an amount of excess of the

26  jurisdictional limits of this Court, according to proof;

27     2.    For compensatory damages, including, but not limited to, lost wages, unpaid wages,

28  and noneconomic damages in the amount according to proof;

PLAINTIFF'S VERIFIED FIRST AMENDED
COMPLAINT FOR DAMAGES

3.     For liquidated damages in the amount equal to unpaid minimum, regular, and/or overtime wages and interest thereof;

4.     For compensatory damages in the amount of the hourly wage made by Plaintiff for each missed or deficient meal period where no premium pay was paid;

5.     For compensatory damages in the amount of the hourly wage made by Plaintiff for each missed or deficient rest break where no premium pay was paid;

6.     For penalties pursuant to Labor Code section 226(e), as may be proven;

7.     For penalties pursuant to Labor Code section 203, as may be proven;

8.     For restitution for unfair competition pursuant to Business & Professions Code section 17200 et seq., including disgorgement or profits, as may be proven;

9.     For an order enjoining Defendants and their agents, servants, and employees, and all persons acting under, in concert with, or for them, from acting in derogation of any rights or duties adumbrated in this Complaint;

10.     For attorneys' fees and costs pursuant to all applicable statutes or legal principles;

11.     For cost of suit incurred;

12.     For prejudgment interest on all amounts claimed pursuant to all applicable statutes or legal principles;

13.     For punitive damages or other penalties recoverable by law;

14.     For economic damages;

15.     For non-economic damages; and

16.     For such other and further relief as the court may deem proper.

///
///
///
///
///
///
///

PLAINTIFF'S VERIFIED FIRST AMENDED
COMPLAINT FOR DAMAGES

1    Dated: August 20, 2025              WEBBER & EGBERT EMPLOYMENT LAW, P.C.

2

3                                        By:    *Shaelyn Stewart*

4                                               Kelsey A. Webber
                                                Douglas M. Egbert
                                                Shaelyn A. Stewart
5                                               Nathan A. Searcy

6
                                         Attorneys for Plaintiff
7                                        JESSICA LEWIS

8

9

10

11

12

13                              **DEMAND FOR JURY TRIAL**

14

15        Plaintiff hereby demands trial by jury for this matter.

16   Dated: August 20, 2025              WEBBER & EGBERT EMPLOYMENT LAW, P.C.

17

18                                       By:    *Shaelyn Stewart*
                                                Kelsey A. Webber
19                                              Douglas M. Egbert
                                                Shaelyn A. Stewart
20                                              Nathan A. Searcy

21                                       Attorneys for Plaintiff
                                         JESSICA LEWIS
22

23

24

25

26

27

28

PLAINTIFF'S VERIFIED FIRST AMENDED
COMPLAINT FOR DAMAGES

1

## **VERIFICATION OF FIRST AMENDED COMPLAINT FOR DAMAGES**

2     I, JESSICA LEWIS, have read the attached First Amended Complaint for Damages and

3 hereby attest that the same is true of my own knowledge, except as to those matters, which are

4 therein stated on my information or belief, and as to those matters, that I believe them to be true.

5     I declare under penalty of perjury under the laws of the State of California that the foregoing

6 is true and correct.

7     This verification is executed on _____8/20/2025_____(date), in

8 \_\_Oroville\_\_(city), California, \_\_95966\_\_ (zip code).

9

10 ID vFM3gAHHhxDtYxKr6jfcnfS4

    JESSICA LEWIS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S VERIFIED FIRST AMENDED
COMPLAINT FOR DAMAGES

**PROOF OF SERVICE**
Case No. 2:24-cv-01108-DC-DMC

I am employed in the County of Sacramento, State of California. I am over the age of 18 years, and not a party to the within action. I am an employee of, or agent for, Webber & Egbert Employment Law, P.C., whose business address is 1610 R Street, Suite 300, Sacramento, CA 95811.

On August 21, 2025, I served the following document(s) described as: **(1) Plaintiff's Verified First Amended Complaint for Damages and Demand for Jury Trial** on the interested parties in this action as follows:

Anthony J. DeCristoforo
**OGLETREE, DEAKINS, NASH, SMOAK, & STEWART, P.C.**
400 Capitol Mall, Suite 2800
Sacramento, CA 95814
E-Mail: Anthony.DeCristoforo@ogleetree.com

*Attorney for Defendant Ulta Salon, Cosmetics & Fragrance, Inc., et al*

**PLEASE SEE ATTACHED SERVICE LIST**

☒ (*BY MAIL*) I caused a true copy of each document, placed in a sealed envelope with postage fully paid, to be placed in the United States mail at Sacramento, California. I am "readily familiar" with this firm's business practice for collection and processing of mail, that in the ordinary course of business said document(s) would be deposited with the U.S. Postal Service on that same day. I understand that the service shall be presumed invalid if the postal cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

— (*BY PERSONAL SERVICE*) I caused to be delivered each such document by hand to each addressee above.

— (*BY CERTIFIED MAIL – CCP §§1020, et seq.*) I caused said document(s) to be deposited with the United States Mail, postage prepaid, return receipt requested, signed by addressee that said documents were received.

— (*BY OVERNIGHT DELIVERY*) I caused a true copy of each document, placed in a sealed envelope with delivery fees thereon fully prepaid in a box or other facility regularly maintained by USPS or delivering to an authorized courier or driver authorized by USPS to receive documents, addressed as set forth below.

☒ (*BY ELECTRONIC SERVICE*) Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at their electronic notification addresses. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Executed on August 21, 2025, in Sacramento, California. I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Elaina Hupe
Elaina.Hupe@WebberLawGroup.com

PROOF OF SERVICE

1